In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-1301

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RENE L. LUCAS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 03 CR 62—**Rudy Lozano**, *Judge.*

———————

ARGUED SEPTEMBER 23, 2005—DECIDED NOVEMBER 29, 2005

———————

Before POSNER, RIPPLE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* After her plea of guilty to obstruction of correspondence was rejected by the district court, Rene Lucas was convicted by a jury of conspiracy to commit identity theft and of obstruction of correspondence. The court then sentenced her to concurrent terms of two years' probation on each charge, six months' home detention, a special assessment of $200 and restitution in the amount of $3,344.32. Ms. Lucas now submits that the district court abused its discretion in refusing to accept her tendered guilty plea to the obstruction of correspondence charge. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A.

Ms. Lucas had known her neighbor Tanisha Myricks for approximately four years. One day, Myricks approached Ms. Lucas and asked her if she would be willing to give Myricks cash in exchange for merchandise that Myricks would purchase by credit card over the internet. Ms. Lucas agreed. The Citibank credit card used by Myricks to purchase the merchandise had been issued in the name of Kathleen Pulkowski, Myricks' former manager. While working for Pulkowski, Myricks had stolen information from Pulkowski's files and had used this information to obtain the credit card.

Several days after Ms. Lucas and Myricks agreed to the exchange, packages containing Wal-Mart merchandise arrived at Myricks' residence. When the delivery service driver found that no one was present to accept the packages, she asked Ms. Lucas, who lived across the street, to accept delivery and to sign for the packages. The packages were addressed to Kathleen Pulkowski. Ms. Lucas signed for the delivery, and left the packages inside Myricks' home with a note on the door to indicate their arrival. Later that evening, Myricks arrived at Ms. Lucas' home with the packages. Myricks opened them and sold the contents to Ms. Lucas.

Subsequently, Ms. Lucas was arrested and charged with: conspiring to commit identity theft,[1] *see* 18 U.S.C. § 371;

---

[1] Title 18, § 1028A imposes criminal penalties on anyone who, in the course of committing one of several enumerated

(continued...)

trafficking in an unauthorized access device, *see id.* § 1029(a)(2)[2]; and obstruction of correspondence, *see id.* § 1702.[3]

## B.

At Ms. Lucas' arraignment on June 12, 2003, she entered a plea of not guilty. On July 31, 2003, however, she petitioned to change her plea to guilty. On August 14, 2003, an amended petition to enter a change of plea was filed. This amended petition contained a plea agreement between Ms. Lucas and the Government under which she agreed to plead guilty to the charge of obstruction of correspondence. In exchange, the Government agreed to

---

[1] (...continued)
felonies relating to theft and fraud, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person."

[2] Section 1029(a)(2) makes it a crime "to knowingly and with intent to defraud traffic[] in or use[] one or more unauthorized access devices during any one-year period, and by such conduct obtain[] anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2).

[3] Section 1702 provides: "Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1702.

seek leave of court at sentencing to dismiss the other two charges and to make certain non-binding sentencing recommendations. Specifically, the Government agreed to recommend the minimum sentence possible under the applicable guidelines, as well as the maximum sentence reduction for Ms. Lucas' acceptance of responsibility.

During the ensuing plea hearing, the district court engaged Ms. Lucas in a lengthy colloquy regarding her participation in the charged criminal conduct. Throughout the hearing, the district court expressed skepticism that her statements established a factual basis of guilt. In particular, the court was doubtful that Ms. Lucas knew, at the time she accepted the package, that it would never end up in the hands of Pulkowski or that Pulkowski had not authorized the transaction. One illustrative exchange consisted of the following:

| | |
|---|---|
| THE COURT: | At [the time you accepted the package,] did you know who Kathleen Pulkowski was? |
| THE DEFENDANT: | Not upon the arrival of the— |
| THE COURT: | Do you know whether she was a friend of Tanisha [Myricks] or not a friend? |
| THE DEFENDANT: | Not at the point of the delivery, no, sir. |
| THE COURT: | At that point did you know anything was improper? |
| THE DEFENDANT: | Yes, I knew Tanisha had ordered these things and she was going to sell them to me later. |

| THE COURT: | Did you know whether she had authority at that point to get anything from Kathleen Pulkowski? |
| THE DEFENDANT: | No, I don't know anything about the authority part. |
| THE COURT: | So you didn't know anything about whether Kathleen was involved in this or not involved in this or what agreement Tanisha may have had or not had with Kathleen Pulkowski, is that correct? |
| THE DEFENDANT: | That's correct, your Honor. |

Tr. at 54-55. Ms. Lucas also told the court that, when she asked Myricks why the packages were addressed to Pulkowski, Myricks responded that Pulkowski was Myricks' godmother. Ms. Lucas then told the court that she had asked Myricks nothing further about why Pulkowski's name appeared on the package. Ms. Lucas testified that she merely had paid Myricks for the merchandise.

Reluctant to accept Ms. Lucas' statements as admissions of guilt to the charge of obstructing correspondence, the district court ordered the parties to submit memoranda in support of accepting the plea. In those memoranda, both parties supported the acceptance of Ms. Lucas' guilty plea. Nevertheless, in an order dated September 3, 2003, the district court rejected the plea; it determined that Ms. Lucas' "proffered factual basis at the change of plea hearing does not establish the necessary element that she acted willfully with design to obstruct correspondence." R.33 at 2.

Ms. Lucas then proceeded to trial. At its conclusion, a jury found her guilty of conspiracy to commit identity theft and of obstruction of correspondence.[4] On January 20, 2005, the court sentenced her to concurrent terms of two years' probation on each charge, six months' home detention, a special assessment of $200 and restitution in the amount of $3,344.32.

## II

## DISCUSSION

Ms. Lucas submits that the district court abused its discretion in rejecting Ms. Lucas' guilty plea. The basic principles that govern our evaluation of such a contention are well-settled. A defendant has "no absolute right to have a guilty plea accepted," and a trial court may "reject a plea in [the] exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Rule 11 of the Federal Rules of Criminal Procedure governs the disposition of pleas in the United States district courts. More specifically, Rule 11(f) requires that, before accepting a plea, the district court find a factual basis for a criminal defendant's plea before accepting it. The purpose of this requirement is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." Fed. R. Crim. P. 11(f) advisory committee's notes to the 1966 Amendments. This factual basis is most easily established when a defendant

---

[4] On Ms. Lucas' motion, the court dismissed as jurisdictionally deficient the original Count II of the indictment, trafficking in an unauthorized device.

"describe[s] the conduct that gave rise to the charge" in the indictment. *Santobello*, 404 U.S. at 261. Despite a trial court's broad discretion in this area, it cannot act arbitrarily in rejecting a plea, and must articulate a "sound reason" for the rejection. *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998).

Ms. Lucas submits that the district court's reason for rejecting her plea was not sound. The offense of obstruction of correspondence, as defined by 18 U.S.C. § 1702, requires that a defendant intercept a package with the intent to obstruct delivery to its rightful recipient. Ms. Lucas submits that her testimony at the plea colloquy established that she prearranged with Myricks to pay her for the items purchased from Wal-Mart. At the plea colloquy, Ms. Lucas also testified that, upon signing for the package, she saw from its shipping label that the package was addressed to Pulkowski, but that it also contained the merchandise that she had arranged to buy from Myricks. This testimony, according to Ms. Lucas, established that, at the time she signed for the package, she knew that Pulkowski never would receive the package addressed to her and that, instead, Ms. Lucas would keep the merchandise after paying Myricks. This testimony, Ms. Lucas contends, established a factual basis to infer the requisite mental state.

The Government invites our attention to a number of Ms. Lucas' statements during the plea colloquy that suggested that her mental state was something "less than the knowledge and willfulness required to establish guilt." Appellee's Br. at 15. Among the more telling statements were Ms. Lucas' admission that she took the package "out of ignorance and duress and stress" and her remark that she "wasn't thinking" when accepting the package. *Id.* The inconsistency of Ms. Lucas' statements, contends the

Government, gave the district court adequate grounds to question her mens rea and, ultimately, to refuse to accept her plea.

We believe that the district court acted within its sound discretion in refusing to accept Ms. Lucas' plea. The court's painstaking colloquy with Ms. Lucas, followed by a direction that the parties submit memoranda on the issue, establishes that the court engaged in a reasoned "exercise of sound discretion" before rejecting Ms. Lucas' plea. *United States v. Kelly*, 312 F.3d 328, 330 (7th Cir. 2002) (quoting *Santobello*, 404 U.S. at 262). These two factors also distinguish this case from the rare instances in which district courts have been found to have abused their discretion in rejecting pleas. *See, e.g.*, *United States v. Delegal*, 678 F.2d 47, 50-51 (7th Cir. 1982) (holding that it was an abuse of discretion for the district court to refuse to accept a guilty plea solely because one aspect of the agreement, though it was understood by both parties, was not contained in the written document submitted to the court); *see also, e.g.*, *United States v. Washington*, 969 F.2d 1073, 1077 (D.C. Cir. 1992) ("The trial court incorrectly focused on the words in the indictment rather than on the offense charged in the indictment.").

Ms. Lucas contends that her admission to the district court that she knew that Myricks was going to sell her the contents of the misaddressed package established that she necessarily meant to obstruct its delivery. However, Ms. Lucas also said that she was confused about whether Myricks was authorized to accept a package for Pulkowski. Read in its entirety, Ms. Lucas' testimony at the plea hearing certainly permitted the district court to conclude that she did not seem to know whether Pulkowski had given Myricks permission to use her

credit card, accept merchandise purchased in Pulkow-ski's name, and sell it to Ms. Lucas in exchange for rent money. Were Pulkowski indeed Myricks' godmother, as Ms. Lucas admitted to being told, the possibility that Myricks was acting with Pulkowski's permission certainly would be an even more plausible scenario. Therefore, because of Ms. Lucas' evident uncertainty regarding Myricks' authority to accept a package for Pulkowski, the district court had adequate grounds to doubt that Ms. Lucas had acted with the "design to obstruct" required by 18 U.S.C. § 1702.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*